**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 5:19-CR-206-KKC** |
| **ROBERT MCCUNE, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION TO SEVER AND TRANSFER VENUE BY DEFENDANT CLINTON PORTIS; MEMORANDUM OF LAW IN SUPPORT**

Defendant Clinton Portis ("Mr. Portis"), by and through undersigned counsel, moves the Court to sever the proceedings against him from the other defendants in this matter and to transfer the proceedings against him to either the Alexandria Division of the Eastern District of Virginia or the Southern Division of the District of Maryland. A Memorandum of Law in support of this Motion follows:

## INTRODUCTION

The Government would force Mr. Portis to stand trial hundreds of miles from his home, his family and friends, and his alleged criminal acts, all due to a technological fluke. When Mr. Portis allegedly conspired with Defendant Robert McCune to submit fraudulent reimbursement claims to the Gene Upshaw NFL Player Health Reimbursement Account Plan, Mr. Portis resided in Virginia, his business was located in Virginia, the reimbursement checks from that Plan were delivered to an address in Maryland, Mr. McCune was in Georgia, and the reimbursement forms themselves seemed headed for Tennessee. Yet Mr. Portis finds himself charged in Kentucky because the faxed reimbursement forms were digitally routed behind the scenes through a Kentucky data center. Though that technological quirk might make the Eastern District of

Kentucky *a* permissible venue for this prosecution under 18 U.S.C. § 3237(a), Mr. Portis's prosecution in a place so detached from the facts and events of this case violates his constitutional rights under the Sixth Circuit's "Substantial Contacts" test. The Court should sever Mr. Portis from this proceeding and transfer his case to a venue that actually has "substantial contacts" with Mr. Portis and the crimes he is alleged to have committed.

## FACTUAL BACKGROUND

The Government alleges that former NFL players engaged in a conspiracy to defraud the Gene Upshaw NFL Player Health Reimbursement Account Plan (the "Plan"). The Government alleges that Defendant Robert McCune, a Georgia resident, recruited Mr. Portis to agree to submit claims to the Plan to obtain reimbursements for the cost of medical equipment that Mr. Portis never purchased or received.

During the 2017-18 NFL season, when the events alleged in the Indictment relating to Mr. Portis would have occurred, Mr. Portis resided in McLean, Virginia.[1] [*See* Lease attached hereto as **Exhibit 1**.] It was at that Virginia residence where he was hand-delivered a copy of a target letter regarding this dispute. [*See* UpshawHRA_00056615 attached hereto as **Exhibit 2**.] And it was at that Virginia residence where Mr. Portis's arrest warrant was issued. [*See* UpshawHRA_00053740 attached hereto as **Exhibit 3**.] Mr. Portis's business, "2 Six LLC," was also based in Virginia. [Indictment ¶ 29 ("Clinton Portis was a member of 2 Six LLC, which was a limited liability company organized under the laws of the Commonwealth of Virginia.").]

Meanwhile, reimbursement forms submitted to Cigna (the Plan's administrator) under Mr. Portis's name identified a mailing address for Mr. Portis in Rockville, Maryland, which the

[1] During the NFL's off-season, Mr. Portis split his time between McLean, Virginia, and the Western District of North Carolina.

Government alleges Cigna then used in processing the reimbursement claim. [*See* UpshawHRA_00001890 attached hereto as **Exhibit 4**.; *see also* Indictment ¶ 29 ("Reimbursement Request Forms submitted to the Plan on behalf of Clinton Portis stated that his mailing address was located in Rockville, Maryland.").] Cigna's records show that it mailed the individual reimbursement described in Counts 7 and 17 of the Indictment to Mr. Portis's listed address in Rockville, Maryland. [*See* UpshawHRA_00001882 attached hereto as **Exhibit 5**.] The Government alleges this reimbursement was later deposited into a bank account held by 2 Six LLC at a bank located in Virginia. [*See* UpshawHRA_00014295 attached hereto as **Exhibit 6**; UpshawHRA_00014373-77 attached hereto as **Exhibit 7**.] Cigna used the same Rockville, Maryland address listed on the reimbursement form and the payment described in Counts 7 and 17 of the Indictment when it mailed a "demand for repayment" letter regarding Mr. Portis's now-disputed claim. [*See* Upshaw HRA_00001903-04 attached hereto as **Exhibit 8**.]

The technical hook that brings this case to Kentucky is the fact that the reimbursement claim was submitted via a fax that, unbeknownst to its sender, travelled at some point through Kentucky. [Indictment ¶ 48 ("The false and fraudulent claims that the Defendants submitted or caused to be submitted to the Plan were all sent by fax.").] Indeed, that the reimbursement form submitted for Mr. Portis might reach a Kentucky data center would have come as a surprise to the person who faxed it: the form was sent from a 404 area-code (Atlanta, Georgia), and the fax instructions on the page (pasted below) simply provided a 1-877 phone number, as well as a mail-to address in Chattanooga, Tennessee. [*See* **Exhibit 4**.]

**ollow these steps to request payment. Incomplete or unsigned forms will be sent back to you; payment cannot be made.**

1. Read the simple instructions on the back of this form.
2. Provide all required information below. An * indicates required information.
3. Do not write "See attached" or "N/A" in any space.
4. Sign in Box 19.
5. **Fax the completed and signed form, along with receipts to:** 1.877.823.8953 (toll free) **or Mail to:** Cigna, P.O. Box 182223, Chattanooga, TN 37422-7223
6. If you have any questions, please call 1-800-501-7633

This information did not mention Kentucky at all. Yet, by mere technological happenstance, when a user faxed a reimbursement form to Cigna, the form would not go to Tennessee (as that form seemed to suggest) but instead to Cigna's offices in Lackawanna County, Pennsylvania, after being routed through a data center in Lexington, Kentucky. [Indictment ¶¶ 23, 48.] That connection is the sole basis for the Government's choice to try the case in this Court. Ironically, were this case to be tried anywhere else, the fact that this fax was routed through a Lexington, Kentucky data center would likely never be mentioned.

## ARGUMENT

This Court should sever the proceedings against Mr. Portis from the other defendants and transfer his prosecution to the Alexandria Division of the Eastern District of Virginia or the Southern Division of the District of Maryland. The Constitution entitles Mr. Portis to a trial in a venue where his alleged crimes "shall have been committed"—not one hundreds of miles from his home, family and friends, and more importantly, from the facts and witnesses at issue in the charges against him. The Sixth Circuit uses the "Substantial Contacts" test to determine whether a particular venue is appropriate for a criminal prosecution. The single connection between this venue and the crimes charged in the Indictment against Mr. Portis—the backend routing of a fax through a Lexington, Kentucky data center—does not satisfy this test.

### I. The Constitution and the Federal Rules of Criminal Procedure require a defendant be tried where his alleged crimes were committed.

Both the Constitution and the Federal Rules of Criminal Procedure protect a criminal defendant's right to a fair trial in a venue with some connection to the defendant and the crimes charged against him. Article III, section 2 of the Constitution guarantees that an accused's trial shall take place where the alleged crimes "shall have been committed." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment similarly ensures that "[i]n all criminal prosecutions, the accused

shall enjoy the right to . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. The Federal Rules of Criminal Procedure incorporate these constitutional guarantees. Rule 18 requires that "the government must prosecute an offense in a district where the offense was committed." Rule 21 gives courts the authority to transfer a proceeding to another district for prejudice or for convenience of the parties. In essence, "[t]he guarantee is for a trial in the state and district where the offense was committed." *United States v. Williams*, 274 F.3d 1079, 1083 (6th Cir. 2001) (quoting *United States v. O'Donnell*, 510 F.2d 1190, 1192 (6th Cir. 1975)).

This constitutional safeguard prevents the "accused from being *dragged to a trial in some distant state*, away from his friends, witnesses, and neighborhood . . . [and] subject[ing] a party to the most oppressive expenses, or perhaps even to the inability of a procuring proper witnesses to establish his innocence." *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007) (emphasis added) (quoting Joseph Story, Commentaries on the Constitution § 925 (Carolina Academic Press reprint 1987) (1833)). It helps protect "a defendant from prosecution in a place far from his home and the support system that is necessary to mount an adequate defense." *Id.* at 651 (citing *United States v. Cores*, 356 U.S. 405, 407, 410 (1958)). Accordingly, it is the Government that bears the burden of proving venue is proper by a preponderance of the evidence. *United States v. Kuehne*, 547 F.3d 667, 677 (6th Cir. 2008).

## II. The Sixth Circuit requires that a criminal prosecution occur in the venue with "substantial contacts" to the defendant and the crimes charged to be constitutional.

The Sixth Circuit applies a "Substantial Contacts" test to determine venue in a criminal prosecution. *United States v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009). As a statutory matter, for "any offense" that is "begun in one district and completed in another," venue may be proper in "any district in which such offense was begun, continued, or completed." 18 U.S.C. §

3237(a).[2] Still, because venue must also be constitutional, and because "venue may in certain cases be appropriate in more than one district, long-standing precedent in [the Sixth Circuit] applies the substantial contacts test to determine appropriate venue." *United States v. Brika*, 416 F.3d 514, 527 (6th Cir. 2005) (citations omitted) (applying substantial contacts test to a § 3237(a) offense); *see also Castaneda*, 315 F. App'x at 569 (noting that the Sixth Circuit uses the "substantial contacts" test to determine which districts qualify as venues under 18 U.S.C. § 3237(a)). The Sixth Circuit nearly 40 years ago adopted the "Substantial Contacts test" outlined by the Second Circuit in *United States v. Reed*, 773 F.2d 477 (2d Cir. 1985). *See United States v. [Estell] Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986).

To "comport with constitutional safeguards," the "Substantial Contacts" test requires "more than some activity in the situs district." *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012) (internal quotation marks omitted). Rather, the test looks to: "[i] the site of the defendant's acts, [ii] the elements and nature of the crime, [iii] the locus effect of the criminal conduct, and [iv] the suitability of each district for accurate fact finding" to determine which venue is appropriate. *Williams*, 274 F.3d at 1084 (quoting *[Estell] Williams*, 788 F.2d at 1215). The nature and elements of the crime and locus effect of the criminal conduct factors can sometimes outweigh the other factors. *See United States v. Zidell*, 323 F.3d 412, 423 (6th Cir. 2003).

## III. Mr. Portis lacks substantial contacts with the Eastern District of Kentucky.

Under the "Substantial Contacts" test, venue is not proper in this District.

[2] Mr. Portis does not contest that the counts he is charged with constitute continuing offenses. *See, e.g.*, *Williams*, 274 F.3d at 1083-84 (conspiracy); *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) (wire fraud). Additionally, while not explicitly addressed by the Sixth Circuit, it appears that health care fraud (18 U.S.C. § 1347) is also a continuing offense. *See, e.g.*, *United States v. Holden*, 806 F.3d 1227, 1231-32 (9th Cir. 2015).

First, all the alleged acts in this matter occurred outside of Kentucky. The Government does not allege that Mr. Portis and Mr. McCune crossed Kentucky state lines to form their alleged conspiracy. Their alleged acts occurred in Virginia (where Mr. Portis and his company were located), Maryland (where the reimbursement checks allegedly went), and, arguably, Georgia (where Mr. McCune was located and where the claim forms were faxed from), but not Kentucky.

Second, the "elements and nature of the crimes" prong of the "Substantial Contacts" test asks where the elements of the charged offenses occurred. *Williams*, 274 F.3d at 1085. This element is met, for instance, where a co-conspirator committed intentional and repetitive acts in the district at issue. *See, e.g.*, *United States v. Wells*, 631 F. App'x 408, 414-15 (6th Cir. 2015) (drug co-conspirator made "phone calls and sales" in the Western District of Michigan); *United States v. Character*, 76 F. App'x 690, 694-96 (6th Cir. 2003) (Michigan co-conspirator "regularly sent cocaine" to defendant in North Carolina); *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001) (co-conspirator committed a robbery in Eastern District of Tennessee).

Here, Mr. Portis is charged in Count 1 with conspiracy to commit wire fraud and health care fraud under 18 U.S.C. § 1349, and in Count 7 with wire fraud and in Count 17 with health care fraud. The elements for health care fraud conspiracy are: (1) an agreement between two or more persons to (2) knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services. *United States v. Chaney*, 921 F.3d 572, 593 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 271, 205 L. Ed. 2d 156 (2019), and *cert. denied*, 140 S. Ct. 301, 205 L. Ed. 2d 156 (2019) (quotation marks and modifications omitted). The elements for conspiracy to

commit wire fraud are "[1] that the defendant devised or willfully participated in a scheme to defraud, [2] that he used or caused to be used an interstate wire communication in furtherance of the scheme, and [3] that he intended to deprive a victim of money or property." *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014) (modifications and citation omitted).

All, or virtually all, of these charged elements occurred (allegedly) outside Kentucky. For instance, at the time they allegedly reached an illegal agreement, Mr. Portis and his company were in Virginia and Mr. McCune was in Georgia. The reimbursement form allegedly submitted as part of that agreement was faxed from Georgia to a 1-877 number at best seemingly directed at Tennessee, listing a Maryland reimbursement address for Portis, to which the money was sent before being deposited back in a Virginia bank account. That fax simply happened to travel not to Tennessee but through a Kentucky data center on its way to Pennsylvania.

<u>Third</u>, the locus effect of the criminal conduct charged in the Indictment occurred entirely outside of Kentucky. In determining the locus effect of the crime, courts consider in which district "'the detrimental effects' of the crime are 'most strongly felt.'" *Brika*, 416 F.3d at 528 (quoting *Williams*, 788 F.2d at 1215, 1216-17). In *Brika*, the Sixth Circuit evaluated a venue challenge where the defendant, convicted in the Southern District of Ohio, made calls from Milwaukee, Wisconsin to Columbus, Ohio requesting a ransom. *Id.* at 517-18. The court held that the since the "'locus of the effect of the criminal conduct' is to be found more in the district in which the call is received than in the district in which it is placed," the Southern District of Ohio met the third factor of the substantial contacts test. *Id.* at 528.

Here, the alleged conspiracy would have formed in Virginia, Maryland or Georgia. Cigna employees, located in Pennsylvania, received and reviewed the supposed fraudulent forms and

documents. Cigna then sent a check to Mr. Portis in Maryland. Mr. Portis then deposited that check in a Virginia bank account for his Virginia company. Kentucky felt none of this.

When faced with a similar fact pattern, the Sixth Circuit overturned a defendant's conviction, finding the district court erred in denying the defendant's pretrial motion to change venue. *Williams*, 274 F.3d at 1081, 1083 (indicating improper venue may be remedied through a Rule 21(b) transfer).[3] In that case, the defendant entered into a drug conspiracy in Houston, Texas with a co-defendant (the defendant's brother-in-law) and a government informant. *Id.* at 1081-82. During taped conversations, the informant (Carboni) repeatedly told both defendants that he planned to take the drugs purchased in Texas and sell them in Michigan. *Id.* at 1082. With the informant's Michigan statements as the only venue hook, the court concluded that the effect of the drug conspiracy "was exclusively in Texas, because, while Carboni mentioned Michigan as *his* final destination, the conspirators did not agree to that, and in truth, even Carboni did not intend to cause the drug to be sent to Michigan." *Id.* at 1085.

Here, it would be absurd to claim that Mr. Portis and Mr. McCune agreed or intended to submit a fax through a Kentucky data center. Nor does it appear that the Government makes any such allegation. From the face of the reimbursement form's 1-877 number and Tennessee mailing address, a person submitting the form would have thought it was going to Tennessee, to the extent they gave the matter any thought at all. Indeed, venue in this district is even less appropriate here than it was in the Eastern District of Michigan in *Williams*, because there is no allegation Mr. Portis had any idea that the claim form would go through Kentucky whereas the defendant in *Williams* had in fact been put on repeated notice that the drugs would go to Michigan. Indeed,

---

[3] *United States v. Del Bosque, et al.*, Case No. 2:98-cr-81103-RHC (E.D. Mich. Mar. 4, 2002), ECF No. 117 (docket sheet attached as Exhibit 9 indicates that on remand district court transferred the defendant's case to Southern District of Texas pursuant to Rule 21(b)).

were this case not charged in Kentucky, the fact that the faxed reimbursement form went through Lexington, Kentucky at some point would not likely be offered to the jury at trial.

This District was also not the intended destination of any of the crimes alleged. By comparison, the Sixth Circuit held that venue was proper in this District where a Florida defendant knew that Kentucky customers, not co-conspirators, were taking drugs back home to Kentucky. *United States v. Elliott*, 876 F.3d 855, 857 (6th Cir. 2017). Even though none of the co-conspirators traveled to or directly interacted with Kentucky, venue was proper "because it was the intended destination of the" drugs. *Id.* at 861-62 ("As this and a number of other circuits have long recognized, '[s]o long as an overt act . . . is intended to have an effect in the district where the case is finally brought, venue is proper [there].'" (alterations in original) (citations omitted)).

Unlike in *Elliot*, Kentucky was the coincidental and temporary destination of the alleged criminal transmission, not the intended one. Again, the reimbursement form itself indicated the intended destination would have been Tennessee, not Kentucky. The form gave no indication that Kentucky could come into play. And ultimately, the faxed reimbursement form ended up in Pennsylvania.

Fourth, Kentucky is not at all suitable for fact finding. The core nature of the offenses and their elements occurred outside the state. *Williams*, 274 F.3d at 1085 (venue most suitable for fact finding, in part, because the offense and its elements occurred in that district). As a result, crucial pieces of evidence and witnesses are located outside of Kentucky. *See Brika*, 416 F.3d at 528 (location of where ransom call received and recorded by the FBI decisive in determining that the district was "the most suitable district in which to carry out relevant fact-finding"). Finally, Mr. Portis does not live in or near Kentucky or have contacts there. *Williams*, 274 F.3d at 1085 (venue

more suitable for fact-finding where the defendant as well as the defendant's family, friends, and potential character witnesses live).

Ultimately, none of the "Substantial Contact" test's factors are met with respect to the Eastern District of Kentucky. Just because a faxed reimbursement form travelled through Lexington, Kentucky does not mean that venue here is appropriate. Whether 18 U.S.C. § 3237(a) is technically satisfied because the form at some point contacted Lexington, Kentucky, the "Substantial Contacts" test is not satisfied and that renders venue here impermissible.

## IV. Venue is proper in the Eastern District of Virginia or the District of Maryland and the Court should sever the proceedings against Mr. Portis from this case and transfer them to either of those districts.

Because venue is inappropriate in the Eastern District of Kentucky under the Sixth Circuit's "Substantial Contacts" test, the Court should transfer the proceedings against Mr. Portis under Federal Rule of Criminal Procedure 21(b) to either the Alexandria Division of the Eastern District of Virginia or the Southern Division of the District of Maryland, either of which would meet that test. And, to accomplish this transfer, this Court should sever the proceedings against Mr. Portis from the other defendants under Federal Rule of Criminal Procedure 14(a).

Rule 21(b) permits the Court to transfer a pending criminal case to another District "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The Supreme Court has cited a list of factors pertinent to a determination of whether a court should transfer a proceeding in the interest of justice. *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240 (1964). The factors are the "(1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district

or division involved; and (10) any other special elements which might affect the transfer." *Id*. at 243-44.

Transferring this prosecution against Mr. Portis to a judicial district in which he resides and where the other witnesses and evidence are located meets these concerns. Indeed, either alternative venues proposed here are more convenient to the Government's counsel from the Department of Justice. Given that none of the other defendants, witnesses, or evidence are located in Lexington, Kentucky, transferring the proceedings against Mr. Portis to a venue related to those proceedings inconveniences no one, especially since the Court recently continued the trial in this matter.

Indeed, other courts facing similar circumstances have severed and transferred a defendant's proceedings to another district. *See United States v. Jessup*, 38 F.R.D. 42, 48-50 (M.D. Tenn. 1965) (granting motions to sever and transfer pursuant to Rules 14 and 21(b) where only two out of three defendants moved for transfer, indicating that when defendants "are otherwise entitled to transfer" pursuant to Rule 21(b) the court "should not hesitate to order the transfer, even though there may be duplication, in the two separate jurisdictions, of the testimony" (quoting *United States v. Erie Basin Metal Prods. Co.*, 79 F. Supp. 880, 886 (D. Md. 1948))); *see also United States v. Clark*, 360 F. Supp. 936, 945-46 (S.D.N.Y. 1973) (granting motion to transfer venue as to five defendants where remaining three defendants either did not move for transfer or actively opposed the motion, remarking that the potential "problem" of duplication of trials was "outweighed by the strong considerations of fairness" and that the problem, "[i]n any event . . . was brought about by [the government's] own questionable decision to prosecute this case in a district remote from most of the events and persons involved"). Some courts hold that even though "Rule 21(b) does not expressly provide for severance, it is a necessary concomitant when a transfer

does not involve all of the defendants in a case." *United States v. Aronoff*, 463 F. Supp. 454, 458 n.4 (S.D.N.Y. 1978) (citation omitted).

Either the Eastern District of Virginia or the District of Maryland would be appropriate choices under the "Substantial Contacts" test. First, the situs of Mr. Portis's alleged criminal conduct is split between Virginia and Maryland. He was living in Virginia at the time of the alleged agreement, his company was there too, as was the bank account into which the reimbursement proceeds were deposited after first being sent to the Maryland address provided on the reimbursement form. Second, for Mr. Portis, most of the elements of the charged crimes point to Virginia, where he was living at the time he allegedly conspired with Mr. McCune. Third, the locus of the alleged agreement was either Virginia, where Mr. Portis and his company were and where the money was ultimately deposited, or Maryland, where the money was originally sent. To the extent it was not in those places, it was in the Northern District of Georgia, where Mr. McCune lived and from where the reimbursement form was faxed. Fourth, because Mr. Portis's alleged actions occurred in Virginia and Maryland, the facts, witnesses, and evidence relevant to Mr. Portis's defense will be centered around those two venues, where Mr. Portis has substantial contacts. Both are suitable venues for fact-finding.

## CONCLUSION

The "Substantial Contacts" test exists for cases like this one. Despite having no connection with Kentucky, and despite having committed no act even foreseeably directed at or felt in Kentucky, and despite there being no known facts, witnesses, or evidence to be found in Kentucky, Mr. Portis is slated to be dragged hundreds of miles to face trial in Kentucky because of an unforeseeable technological coincidence that would never even be mentioned were he tried elsewhere. Mr. Portis respectfully requests that this Court sever him from this proceeding and

transfer his case to either the United States District Court for the Eastern District of Virginia or the United States District Court for the District of Maryland.[4]

Respectfully submitted,

Adam C. Reeves
Stoll Keenon Ogden PLLC
300 W. Vine Street, Ste. 2100
Lexington, KY 40507
adam.reeves@skofirm.com

/s/ Adam C. Reeves
*Counsel for Defendant Clinton Portis*

[4] Mr. Portis has located counsel prepared to defend him in either of these districts.

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed electronically using the ECF system on April 18, 2020, which shall provide electronic service to all parties and counsel of record.

/s/ Adam C. Reeves
*Counsel for Defendant Clinton Portis*