UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 5:19-CR-206-KKC |
| ROBERT MCCUNE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**SENTENCING MEMORANDUM
ON BEHALF OF CLINTON PORTIS**

Defendant Clinton Portis, by counsel, respectfully submits this Sentencing Memorandum to assist the Court in fashioning a sentence that is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553(a). For the reasons set forth below, Mr. Portis respectfully requests a sentence of time served in lieu of incarceration.

**INTRODUCTION**

Clinton Portis appears for sentencing after pleading guilty to one count of conspiracy to commit health care fraud, his first criminal offense. (PSR ¶¶ 1, 45-65.) As the Court is aware following trial in August to September of this year resulting in a hung jury, the offense arises from a scheme orchestrated by Robert McCune to submit false claims to the Gene Upshaw National Football League ("NFL") Player Health Reimbursement Account Plan ("HRA Plan"). Mr. Portis admitted in his plea agreement that he was "aware of a high probability that that the claims McCune submitted on his behalf were false and fraudulent and deliberately ignored that fact." (D.E. 452-1 at 3.). Mr. Portis has recently fully satisfied his restitution obligations by returning the full $99,264.00 taken from his HRA account to the HRA Plan.

1

The Sentencing Guidelines assign Mr. Portis a total offense level of 12. (PSR ¶¶ 34-43.) That offense level carries a recommended imprisonment range of 10-16 months for someone like Mr. Portis in Criminal History Category I. (PSR ¶ 86.) Mr. Portis agrees with the Guidelines calculation in the PSR but respectfully asks the Court to impose a sentence of "time served" in lieu of incarceration. Indeed, the Court has declined to impose a sentence of incarceration on many defendants charged in this case and another, separate case based on the same conduct. (*See* D.E. 533-36, sentencing Defendants Fredrick Bennett, Antwan Odom, Darrell Reid, and Anthony Montgomery each to three years of supervised release, home detention of 180 days, and 240 hours of community service; 19-cr-205, D.E. 88, sentencing Carlos Rogers to one year of supervised release, home detention of 180 days, and 400 hours of community service, *and* 19-cr-210, D.E. 52, sentencing Joe Horn to three years of supervised release, no home detention, and 200 hours of community service). For the reasons discussed below, Mr. Portis's sentence should be no greater than those imposed on these other defendants.

A sentence of time served is "sufficient but not greater than necessary to comply with the purposes" of § 3553 and will provide a more just sentence than imprisonment based on the Section 3553(a) factors, especially the need to avoid unwarranted sentencing disparities. A sentence of time served also considers that Mr. Portis has minor children who depend on him—including infant twins who live with him and his partner and who were born prematurely in August 2021, just weeks before trial. Such a sentence will also allow Mr. Portis to continue the good work in his community he has been doing his whole adult life, as shown in the outpouring of support he has received in the almost 60 letters from people whose lives he has touched, which are being submitted as Exhibit A.[1]

---

[1] Mr. Portis has also written a letter to the Court directly, and it is attached as Exhibit B.

# ARGUMENT

In imposing an appropriate sentence, the Court may vary from the Guidelines range because it is purely advisory. *United States v. Booker*, 543 U.S. 220 (2005). Indeed, the Guidelines range is simply one factor along with those in 18 U.S.C. § 3553(a) the Court must consider in determining a just sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines are "the starting point and the initial benchmark," but a court "may not presume that the Guidelines range is reasonable." *Id.* at 49-50. Rather, a sentence should be imposed after consideration of all the § 3553(a) factors and "an individualized assessment based on the facts presented." *Id.* After all, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). It is well within the Court's discretion to find that "a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). The Sixth Circuit in *United States v. Grossman* approved the process a district court must employ in sentencing a defendant: "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence[.]" 513 F.3d 592, 595 (6th Cir. 2008) (*citing Gall*, 552 U.S. at 53). Here, following this sentencing procedure should result in a sentence of time served.

I. **§ 3553(a) Factors**

A. **The Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)**

The Gene Upshaw NFL Player HRA Plan is a health reimbursement account providing benefits to certain former NFL players. Plan Participants, like Mr. Portis, earn a predetermined amount, accrued to their accounts, for every "credited season" they played in the NFL. Once those

3

amounts are credited to a Participant's account, the Participant obtains a "nonforfeitable" right to those amounts.

The first time Mr. Portis recalls hearing about the HRA was at a dinner with former teammates in December 2017. One of those teammates told Mr. Portis that another former player, Robert McCune, knew how to get health care expenses reimbursed through the HRA Plan and that others were working with Mr. McCune. Shortly after the dinner, Mr. McCune called Mr. Portis. Mr. McCune said that he was working with a team of doctors who could help Mr. Portis get money from his HRA account.

Rather than questioning what steps Mr. McCune would take on his behalf or what expenses would be reimbursed, Mr. Portis allowed Mr. McCune to make submissions in his name. This, Mr. Portis knows, was a serious error in judgment. After giving Mr. McCune some personal identifying information needed to submit the paperwork, Mr. Portis received a reimbursement check for $44,732. After receiving this first check, Mr. Portis should have known that he lacked the necessary details to accept the money. Nevertheless, Mr. Portis deposited the check in his bank account and paid Mr. McCune $4,000. And, when Mr. McCune reached out again a few months later, offering to prepare the paperwork for a second withdrawal from Mr. Portis's account, Mr. Portis consented when he should have known it was illegitimate. He received a check for $54,532 shortly after and paid Mr. McCune $8,000.

After these two transactions, Mr. Portis had no further interactions with Mr. McCune. Mr. Portis did tell two friends that he had received reimbursements through Mr. McCune. But Mr. Portis never asked for or received anything of value from either of those friends, or from any other player. Still, Mr. Portis accepts that he should have known better than to permit Mr. McCune to submit claims for reimbursement in his name.

**B. The History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)**

*1. Background*

Clinton Earl Portis, Jr. was born in 1981 in Laurel, Mississippi. (PSR ¶ 67.) Mr. Portis was raised by his mother in Laurel until they moved to Gainesville, Florida, where he attended Gainesville High School. (PSR ¶ 68.) Though Mr. Portis's parents were not married, Mr. Portis saw his father every weekend when he lived in Mississippi, and his father would travel to Mr. Portis's football games after the family moved to Florida. (*Id.*) Mr. Portis also has a stepfather, who helped raise Mr. Portis. Mr. Portis had good relationships with his parents and his stepfather. He participated in basketball, football, and track, continuing with the latter two through college at the University of Miami and eventually joining the NFL. (*Id.*)

Mr. Portis's successful NFL career as a running back began in 2002 when he was drafted by the Denver Broncos. He spent two years with the Broncos before he was traded to Washington. (PSR ¶ 78.) He played with Washington for seven seasons, before retiring in 2012. Since retirement, Mr. Portis has experienced financial struggles. Mr. Portis's financial advisors registered with the NFL Players Association lost several million dollars of his money in a bad casino deal and a Ponzi scheme. They even took out a secret mortgage on the dream house Mr. Portis had purchased for his mother in Gainesville, Florida, using a power of attorney they had convinced him to sign. As a result, Mr. Portis filed for bankruptcy in 2015. After Mr. Portis was indicted in December 2019, most of his business opportunities dried up, and he lost his broadcasting job with the Washington Football Team. (PSR ¶ 78.)

Leslie Satchell, who worked with Mr. Portis when he was in the NFL, summarizes the situation as follows:

> Clinton has a big heart, which led him to overextend himself to friends, family and even associates because he just wanted to help. Then, he empowered the wrong financial advisors who left him in dire straits. . . .

> I wish I could say I'm surprised about his troubles, but I am not. Trusting too many people and not taking the time to learn about business or increasing your financial acumen to match your portfolio is a recipe for disaster. People assume when players have money, they know how to manage money—and that is simply not true. From my talks with Clinton, I think he was insecure about his lack of knowledge and almost pretended to understand things when he didn't. Instead of asking for help, he faked it because the people around him assumed he was knowledgeable.

2. *Medical History*

Mr. Portis's football accomplishments came at a cost.  As Mr. Portis described at trial, a running back is like a crash test dummy, and each carry is like a car wreck.  In his NFL career alone (not including high school, college, or countless practices and the preseason), Mr. Portis ran the ball 2,230 times.

Most NFL running backs only play for a couple of seasons because of injuries.  Mr. Portis made it for nine seasons, despite those injuries.  After previously having surgery in 1998 for a torn labrum and rotator cuff in his right shoulder, Mr. Portis required another surgery in 2006 for those same injuries in his left shoulder.  (PSR ¶ 71.)  In 2006, Mr. Portis also required surgery on his hands after a game, leaving him with numbness and tingling that comes and goes to this day.  (*Id.*)  He broke three of his toes and his ribs while playing and tore his groin, which turned out to be the end of his NFL career.  Mr. Portis has also experienced over twenty concussions during his time playing football, from high school to the NFL.  (*Id.*)  As a result, he has numbness in his arms and legs, headaches, light sensitivity, and short-term memory loss.  He spent an estimated half-million dollars out of pocket healing his body during his career.

3. *Community Involvement*

As shown in the 59 letters submitted for Mr. Portis by those who know him, his community involvement is extraordinary:

6

- I accepted him as a friend of the family based on his kindness, willingness to be present for our group of kids, and overall great demeanor. Quite frankly, it has never gone unnoticed in my eyes just how much he cares for his own kids and how he cares for all of our kids with just as much sincerity. From the first few times Clinton and his family joined in on holidays and celebrations with friends, it was obvious that he would do anything for his family. He always engages all of our kids, promoting and encouraging them to work hard and chase their dreams. He gives endless hours of his time to not just train our kids, but to provide a safe place for them to play, be active, and learn work-ethic. It should also be said that he is compassionate towards others and, from a parent-to-parent perspective, he has been someone who contributes to the growth of our community.[2]

- Clinton continues to play a huge and important part of my support system and the village that helps to raise and guide my son (especially since my son's father is not involved in his life). Likewise, we both have trusted each other with our children. Whenever my son is with Clinton, I have full confidence that he is safe and well taken care of. I can recall early on after meeting Clinton, observing that he was spread quite thin commuting back and forth to Charlotte for work while still remaining very involved and present in his children's lives. I was so impressed that I shared with him how good of a father I thought he was. At that moment and with a humble response, Clinton stated "it takes a village". Since our initial meeting, Clinton has always been a true gentleman who has a heart of gold. He is a giver and loves his family and friends. Additionally, Clinton is reserved with a great sense of humor, yet is also extremely intelligent and gifted. Clinton recently shared some of his written poetry which left us all speechless. It was yet another hidden talent along with the various times he has dropped nuggets of wisdom and knowledge which was priceless. Clinton has always stepped up and stepped in to help by constantly verbalizing and demonstrating to my son and other boys within our village how much he believes in them. For the last two summers, Clinton has taken it upon himself to create what he calls "Toughie Camp", where for at least two to three days per week he would spend time training the boys in our village both mentally and physically; all being done as another way to show them how much he cares. That said, Clinton has acted as a mentor and in some regards a father figure to my son.[3]

- During the height of the police shootings and riots in 2016 and 2017, I watched Clinton console and inspire dozens of widows of fallen officers. I have seen him boldly lock arms with law enforcement during times when many of his peers were demonizing all of them. I have watched him hands on in Haiti bringing food and medicine to some of the most impoverished kids in the western hemisphere. I have seen him in the inner cities across America sharing his personal story and giving kids the keys to success which they were hearing for the first time.[4]

---

[2] Ex. A at A45, Nov. 2, 2021 Letter submitted by Silvana Lewis.

[3] Ex. A at A31, Nov. 3, 2021 Letter submitted by Angela Harris.

[4] Ex. A at A5, Nov. 6, 2021 Letter submitted by Jack Brewer.

- I met Clinton some years ago when I worked as a part of the "Tsunami Literacy Program" in Salisbury, NC. I served on the board and was responsible for the program's annual fundraising event (The Annual Mixer). As a friend of the founder, Clinton was identified as a person willing to donate time and support to increase literacy outcomes for our youth. Clinton provided support and declined any payment for his services. In addition, Clinton delivered an inspirational message via video to address the crowd in his absence. In 2019 I served as the Department Chair of Social Work at Winston-Salem State University. Our department wanted to provide a special program for students unable to have a "normal" graduation because of the pandemic. As a result, I reached out to several people to request a special video "shout out" for the graduating seniors to be played during the event. Clinton agreed immediately and delivered a heartfelt congratulatory video-recorded message.[5]

- He made a mistake and need[s] to be with his family, friends, and youths that he is coaching and mentoring in the Charlotte area. I have two sons (one is a Senior in high school) that works out and speaks with Mr. Portis on a regular basis. . . . Mr. Portis is always supporting my sons and giving them advice about the mistakes he made to discourage them from making the same mistakes. Mr. Portis has been a positive role model for my sons.[6]

- During my tenure as a Florida Educator, we always had guest speakers, donors and community partners in education who supported our school, student and family needs/requests. Mr. Portis was one of the most notable and most benevolent. To name a few, he supported our school in the following ways:

    - Visited individual classes to engage with students
    - Provided autographed paraphernalia for staff, students and families
    - Donated instructional and school supplies for teachers and students[7]

- Similarly, Clinton has been a fixture at basically every charitable event we do. His warm spirit, his sense of humor, and his unassuming nature draw you to him. He is always dependable, always generous with his time, and always a crowd favorite. I (Tanya) am a cancer survivor and have made the fight against breast cancer a central focus of my life. Clinton comes to our events, meets with survivors going through chemotherapy, and gives everyone a boost and makes them feel welcome.[8]

- I've watched him train entire neighborhoods all summer long, working with not only his sons but entire football teams helping to develop boys into young men.[9]

---

[5] Ex. A at A8, Sept. 14, 2021 Letter submitted by Meade Byrd.

[6] Ex. A at A78, Sept. 17, 2021 Letter submitted by Samuel Wright.

[7] Ex. A at A6, Oct. 12, 2021 Letter submitted by Martha Brown.

[8] Ex. A at A63, Nov. 4, 2021 Letter submitted by Daniel and Tanya Snyder.

[9] Ex. A at A34, Oct. 31, 2021 Letter submitted by Deiric Jackson.

- Clint is a cheerful and very helpful individual who loves people no matter what condition they are in. While in Gainesville, Florida, Clint planned a community cook out for his peers, family and friends at his expense. He set aside precious time to sign footballs for kids who had the same dream as his. Imagine what joy these Kids' heart felt.[10]

- He's big in the community, having functions over the years where multiple NFL players and entertainers would come to his hometown and do charitable work on his behalf.[11]

- Clinton is a VERY charitable person and what he has done in the community far exceeded his play on the field. Clinton will always put on events, particularly during the holiday season where he would visit communities of need and serve food to the hungry. He would call all his friends for support, and we would all be there. Not only because it was the right thing to do, but for how important it was to him that we all gave back to the community that continues to support us.[12]

- You will see him on the sideline for all the teams that our kids have played on and he eventually sneaks his way into coaching in some capacity. I pick on him and tell him that you played football, NOT basketball, baseball or anything else! But it never fails, he is always there on the sideline cheering the boys toward victory! Cam and my middle son just wrapped up their middle school football season. Clinton was on the field, of course! He brought a cooler of Gatorade and waters for the football team every week. Not b/c he was asked to but b/c he has a caring heart. He ordered some hoodies for all the 8th graders on the team b/c he is just that considerate. He has spent the past few summers training kids for sport's conditioning. He calls it his "toughy camp". He's not doing it for money b/c he wasn't paid. He started out doing it for the kids at his house and in his neighborhood and the more the merrier in his mind. That's just who he is.[13]

- Clinton has been involved in Knockout for Abuse (a part of Fight Night), Walk This Way (cancer support group), Haiti global ambassador for Community Coalition for Haiti (bringing clean water, hearing aids, and electricity to Haiti has been crucial), Soul Giving (feeding families for Thanksgiving), Big Heart Brigade (feeding families for Thanksgiving for over 25 years, continuing to support military families and Navy SEALs, and Three Kings (encourages youth to see outside of their environment).[14]

---

[10] Ex. A at A47, Oct. 14, 2021 Letter submitted by Venus McCray.

[11] Ex. A at A40, Sept. 8, 2021 Letter submitted by Edgerrin James.

[12] Ex. A at A71, Oct. 20, 2021 Letter submitted by Shawn Sutton.

[13] Ex. A at A14, Nov. 7, 2021 Letter submitted by Sheree Conner.

[14] Ex. A at A51, Oct. 21, 2021 Letter submitted by Dean Morehouse.

- Mr. Portis held community events to bring residents of Gainesville, FL together, donated to help build a sports complex where youth can play safely, as well as donated to impoverished families.[15]

- Mr. Portis has assisted our church with helping the community that I serve as pastor in so many ways. He is one that doesn't like his name to be spotlighted for charitable endeavors, however Mr. Portis is vital to the people in the Liberty City section of Miami, and I pray that he will have the opportunity to continue to help us serve this community.[16]

- Clinton would also host picnics and events in Gainesville, FL where he grew up. These events were free to the entire community. His foundation also supported the under privileged kids in the city. I have travelled to these events to help support him in his efforts.[17]

- Throughout my fifteen years in Prince George's County Public Schools, he has agreed to visit and speak to the students at my schools. He has always known the importance of One of the most impressive things I've seen from Clinton was how he had the ability to connect with the youth. Every time he went to a youth practice or left a Redskins game he would find a fan and just get out of the car and talk to them.[18]

- I've witnessed him coaching and teaching his sons the game and being that father role model for all the kids on their teams.[19]

- After meeting Mr. Portis at a football camp where we worked together to coach and train young people to get better at their craft; I approached Mr. Portis to see if he would assist with spreading my message to young people. After hearing my position on young people of color, and my determination to assist them in becoming successful. Mr. Portis eagerly joined the cause. He and I have spoken at 13 High schools over the past (6) to offer guidance to young people. We stand united in the fight to assist young people. As a direct result of Mr. Portis' efforts, we have been able to fill the (trade) classrooms with countless young people. These young men and women of color now have opportunity to earn an honest living; that they will be well paid for. Some of these young people will go on to be entrepreneurs, and leaders in the construction industry.[20]

- Clinton has been a true friend to me. He has done that by not only attending the kids camp I've had in the past, but also helping create the mentorship template to ensure the

---

[15] Ex. A at A11, Nov. 9, 2021 Letter submitted by Christopher Certain.

[16] Ex. A at A10, Oct. 27, 2021 Letter submitted by Rev. Steven Caldwell.

[17] Ex. A at A30, Oct. 27, 2021 Letter submitted by Sheila Hampton.

[18] Ex. A at A44, Nov. 1, 2021 Letter submitted by Andre' Kates.

[19] Ex. A at A62, Nov. 1, 2021 Letter submitted by Rod Smith.

[20] Ex. A at A48, Oct. 31, 2021 Letter submitted by Gregory Meizinger.

10

engagement is a year-round deal along with accountability to take the kids to the next level with hopes of securing a scholarship and possible making it to the NFL.[21]

- Clint started youth programs that have become eagerly sought attractions for young scholar athletes to challenge themselves and achieve notable personal and physical development. Although many excel in various athletic arenas, he exquisitely fosters mental and emotional maturation and unapologetically services the "village" it takes to positively influence this next generation. He is exceptionally generous with his time and resources in selfless regard for the well-being of others.[22]

- A prime example would be how he took time out of his schedule over the past few summers to work with kids (including mines) to help get them into shape for the next school year. He treats all of them like they are his own kids and makes sure everyone is treated the same. Plus offer advice on how they can progress with their athleticism and in life.[23]

- Coincidentally, he volunteered as an assistant coach for a local community flag football team that my son briefly played for. He was very involved as not only a coach but a positive role model for the children. His presence within the team was significantly motivating and encouraging to inspiring young men.[24]

- Whether it's young men from upper-, middle-, or lower-class families, I've personally witnessed Mr. Portis pour into the life of young men and have a positive influence and impact on them. For the past nine years, I have personally witnessed and been a part of many positive programs, community initiatives, and influences he has led or been a part of. From being a guest speaker for middle schoolers and discussing the importance of being a good student, to taking kids to football camps, coaching city football leagues, being a leader in the Men of Irwin elementary school mentoring program, speaking with NFL dads about the life after the NFL, attending financially supporting birthdays parties for kids who are unprivileged, and hosting sleepovers and barbecues for young men who would otherwise be involved in matters not productive.

  Having spent the past nine years witnessing Mr. Portis positively work within the community; I came to truly affirm Mr. Portis' sincerity in March of 2020 during the world-wide pandemic. As young people were at home alone trying to educate themselves remotely and many parents stilling going to work, Mr. Portis volunteered at no cost to homeschool 17 boys from March 2020 – June 2020 at his own home. The boys were from all walks of life. They were dropped off at 9:00 a.m. and participated in their classwork through 12:00 p.m. Mr. Portis coordinated a group of men who volunteered their time to support the young boys daily. The boys would eat lunch about 12:30 p.m. and begin a

---

[21] Ex. A at A66, Oct. 31, 2021 Letter submitted by Takeo Spikes.

[22] Ex. A at A61, Nov. 2, 2021 Letter submitted by David Smith.

[23] Ex. A at A77, Nov. 4, 2021 Letter submitted by Nicole Wright.

[24] Ex. A at A55, Nov. 2, 2021 Letter submitted by Jevon Rhodes.

11

- sports fitness workout that involved teambuilding, collaboration, social and emotional learning. Mr. Portis charismatically used sports as the main vehicle to develop and instill life-skills in these young men. I know these experiences have translated in their success in school, on the field/court, and in their community.[25]

- Clinton and I both currently live in the Charlotte, NC area, I continue to see firsthand his passion for helping others as he gives of his time coaching youth football.[26]

- In each and every setting, Clinton has been a great ambassador for our University and athletics program. As a very recognized and iconic figure among our donors, alumni and fans, Clinton is repeatedly asked to pause for autographs or for pictures and I have yet to see him turn down a request which, unfortunately, is not something that I can say for all of our high-profile alumni. Clinton is always willing to engage with strangers of all ages, sharing his stories, experiences and lessons learned along the way. For example, in 2015, Clinton served as our ACC (Atlantic Coast Conference) Legend representing the University and was a class act throughout the event and I received very positive feedback on his participation.[27]

- The most important characteristic of our group is every destination we travel, a philanthropic endeavor is exercised. Mr. Portis has been instrumental in many of our efforts. From helping us donate books, computers and most importantly speaking to children in these foreign countries and embedding in their minds as a perfect example that there is no limit to what they can achieve in life. Most memorable, I as an alumnus of Howard University and gave Mr. Portis a tour experience of Howard University's homecoming through the eyes of alumni in my demographic (I am 47 years of age). A standout moment occurred when close friends who traveled with their high school sons were introduced to Mr. Portis and close friend Edgerrin James. The conversations with the teens focused on health, opportunities and how more things are harder to obtain than easy in this life. Ignorance is bliss they say. The teenagers had no idea of Mr. Portis or James status and took them for just cool, but wise older men.[28]

- Through the years, Clinton and Santana would host and finance special events for children, inviting their football friends to participate. I know that during that time, many children where left with an experience of a lifetime, never to be forgotten. Most times, after a long day of camps and/or community events, we would all end up at Clintons house for a BBQ, catered by his mother and stepdad. Many athletes have opportunities to give back to a community, but they don't, yet Clinton did![29]

---

[25] Ex. A at A12, Dec. 28, 2021 Letter submitted by Marty Conner.

[26] Ex. A at A21, Nov. 3, 2021 Letter submitted by London Fletcher.

[27] Ex. A at A39, Sept. 13, 2021 Letter submitted by Blake James.

[28] Ex. A at A29, Nov. 2, 2021 Letter submitted by Omar Hamilton.

[29] Ex. A at A68, Oct. 28, 2021 Letter submitted by Lily Stefano.

- Over the years I've known Clinton to partner with numerous organizations to distribute coats, food, books etc to hundreds of children and families on many occasions in the Washington, D.C. area. Even when there were no crowds around, he was the person who would speak to a homeless guy outside of a restaurant he was entering, and would purchase him a meal on his way out. His desire to support others regardless of their circumstance was immeasurable. In 2009, he was even honored as the Special Olympics D.C. Athletes' Choice. On several occasions, I requested his participation in my own charitable events benefiting under-privileged youth in New Orleans, LA. He never hesitated and always sent whatever was requested of him.

  Although his professional playing days came to an end and his days being in the public eye decreased, Clinton continued to inspire youth and support charitable organizations. In 2017, I traveled with Clinton and JBF Worldwide on a tour in Haiti where we visited orphanages and a cancer treatment facility. I remember personally going through a hard time when Clinton convinced me to join the group on the trip. He informed me that he had gone on this trip before and had become a Global Ambassador for the organization. His words to me were, "it will be life changing." He was right. I even remember his excitement when he informed me there would be no hot water. It was then that I was convinced this was his true character. Participating in so many events throughout the years wasn't because it was what he thought he should do because of his status, nevertheless it was because he truly enjoyed the opportunity to make an impact on someone else's life regardless of what luxuries he had to give up temporarily. Being a professional football player was what he did, it was never who he was. He further explained that this organization saved thousands of lives in Haiti each year and how it gave orphans the chance to have an education. I could tell how grateful he was to be a part of it.[30]

   4. Dependents

As discussed above, Mr. Portis has minor children (PSR ¶ 69) who depend on him and whose interests will be served by a sentence of time served that keeps Mr. Portis in their lives and in the workforce earning money for their support.  In contrast to the government's focus on Mr. Portis's past difficulties in fulfilling child support obligations,  Lashundra Jones, the mother of Mr. Portis's 14-year-old son Chaz, noted:  "Clinton serves as an active, influential, caring father" to Chaz and "there has not been a time … that [Clinton] has not stepped up for, Chaz."[31]  Likewise, his neighbor, Sheree Conner, describes Mr. Portis as a very involved father and noted how "[h]e

---

[30] Ex. A at A75, Dec. 9, 2021 Letter submitted by Wendy Wiltz.

[31] Ex. A at A42, Nov. 1, 2021 Letter submitted by Lashundra Jones.

13

is always present for the kid's sporting events" and "likes to share in not just our kid's success but other kids in the area," always finding a way "into coaching in some capacity" and providing support and donations to the youth sports teams. She adds that Mr. Portis was not asked to do these things, but does them "[because] he has a caring heart."[32] A friend and fellow parent, Silvana Lewis, echoed that sentiment, saying "it has never gone unnoticed in my eyes just how much he cares for his own kids and how he cares for all of our kids with just as much sincerity."[33] Other parents have also shared how Mr. Portis helps to support other children in addition to his own and be a positive role model, describing him as part of "our village" and "as a mentor and in some regards a father figure."[34]

Both before trial in this case and since, Mr. Portis has made substantial efforts to meet his various child support obligations. Incarceration would take Mr. Portis away from his children and those he supports and would halt all the positive changes Mr. Portis has made in his life since trial, including, for example, improving his financial literacy and hiring family-law counsel to represent him in a child support matter in which he had not previously participated due to being served at an address where he does not live. These efforts to make good on his obligations would be erased by a custodial sentence.

### C. The Need for the Sentence Imposed, 18 U.S.C. § 3553(a)(2)

#### 1. *Seriousness of the Offense, Respect for the Law, and Just Punishment*

Mr. Portis accepts responsibility for his actions. As one letter of support puts it, Mr. Portis is "more than remorseful."[35] As noted in yet another letter, Mr. Portis told friend and former

---

[32] Ex. A at A14, Nov. 7, 2021 Letter submitted by Sheree Conner.

[33] Ex. A at A45, Nov. 2, 2021 Letter submitted by Silvana Lewis.

[34] Ex. A at A31, Nov. 3, 2021 Letter submitted by Angela Harris.

[35] Ex. A at A59, Sept. 20, 2021 Letter submitted by Leslie M. Satchell.

14

teammate, Takeo Spikes, that "he should have known better, and it was a bad decision."[36] He also told Spikes that he is ashamed and is concerned "about the detriment of how its perceived from all the kids he has mentored."[37] Similarly, Mr. Portis called his childhood friend, Deiric Jackson, after the news of his plea agreement became public, to tell him "that he had made a mistake and immediately took ownership of what he had done," recognizing that "he must pay his debt to society."[38] He told yet another childhood friend, Kathalae Adams, "'I will make this right, I will do better.'"[39] Mr. Portis has learned "where he went wrong—when he should have asked more questions and checked."[40] He admits that he needs more financial literacy.

   2. *Adequate Deterrence to Criminal Conduct & Public Protection from Further Crimes*

This is Mr. Portis's only criminal conviction in his 40 years of life. (PSR ¶ 45-65.) He regrets his actions and takes full responsibility for them. Mr. Christopher Certain shares that "Clinton understand[s] that he is mixed up in something he should not have been, and is looking forward to moving past this and repairing the damage that this situation has done to others, his family, and himself."[41] Echoing that sentiment, Commissioner Brewer notes "that anyone truly close to Clinton sees and feels the remorse and humility he wears following this public humiliation."[42] Mr. Portis knows to be more aware and diligent in his future financial dealings to avoid breaking the law. A former teammate, Rod Smith, "know[s] that [Clinton] will be a better

---

[36] Ex. A at A67, Oct. 31, 2021 Letter submitted by Takeo Spikes.
[37] *Id.*
[38] Ex. A at A34, Oct. 31, 2021 Letter submitted by Deiric Jackson.
[39] Ex. A at A1, Oct. 26, 2021 Letter submitted by Kathalae Adams.
[40] Ex. A at A59, Sept. 20, 2021 Letter submitted by Leslie M. Satchell.
[41] Ex. A at A11, Nov. 9, 2021 Letter submitted by Christopher Certain.
[42] Ex. A at A4, Nov. 6, 2021 Letter submitted by Jack Brewer.

15

man because of this situation and will work extremely hard to put it in the past and continue to impact the lives of others."[43]

As Daniel and Tanya Snyder, the owners of the Washington Football Team—and, therefore, the contributors to the HRA plan from which Mr. Portis was paid—stated in their letter of support, they "were shocked when Clinton was indicted … [n]ot because Clinton got wrapped up in something where others did not have his best interest in mind, but because Clinton is the opposite of a criminal. We support Clinton fully. He has told us how deeply he regrets getting involved in what he should have known was not legitimate. And he has suffered deeply for it, particularly as he has missed out on employment opportunities including with what was a promising broadcasting career. It has been hard watching our friend go through this."[44]

Mr. Portis has been deterred from ever repeating these mistakes by his very public indictment, and even more so now by his pleading guilty. Mr. Portis lost his broadcasting job with the Washington Football Team and was unemployed for almost two years after he was indicted. (PSR ¶ 78.) Though he has had opportunities from a few sports betting shows such as Bleacher Report and Fox to join the newly legalized world of sports betting, those opportunities were put on pause once he was indicted. Mr. Portis has already been adequately deterred and there is no need to protect the public from Mr. Portis. Indeed, the community is better with Mr. Portis out of prison than in it.

D. **The Avoidance of Unwarranted Disparities among Defendants 18 U.S.C. § 3553(a)(6)**

The Court has sentenced or will be sentencing 14 players in connection with this scheme (out of about 70 players who participated). To date, the Court has sentenced 11 players, six of

---

[43] Ex. A at A62, Nov. 1, 2021 Letter submitted by Rod Smith.
[44] Ex. A at A63, Nov. 4, 2021 Letter submitted by Daniel and Tanya Snyder.

whom—Carlos Rogers, Antwan Odom, Darrell Reid, Anthony Montgomery, Fredrick Bennett, and Joe Horn—were sentenced to no prison time, as shown on the table below.  (19-cr-205, D.E. 88; 19-cr-210, D.E. 52; and D.E. 533-36.)  Mr. Portis should be handed a lesser sentence given his comparative culpability to those six players.

| Date | Defendant | Guidelines Range | Judgment |
| --- | --- | --- | --- |
| 4/29/2021 | Carlos Rogers | 12-18 months | Home detention (180 days) Probation (12 months) Community service (400 hours) |
| 10/21/2021 | Antwan Odom | 10-16 months | Home detention (180 days) Probation (36 months) Community service (240 hours) |
| 10/25/2021 | Darrell Reid | 6-12 months | Home detention (180 days) Probation (36 months) Community service (240 hours) |
| 10/25/2021 | Anthony Montgomery | 10-16 months | Home detention (180 days) Probation (36 months) Community service (240 hours) |
| 10/26/2021 | Fredrick Bennett | 6-12 months | Home detention (180 days) Probation (36 months) Community service (240 hours) |
| 11/10/2021 | Joe Horn | 10-16 months | No home detention Probation (36 months) Community service (200 hours) |

Mr. Portis is less culpable than Carlos Rogers, who admitted to (consistent with text messages) actively recruiting players (like Anthony Montgomery) into a separate conspiracy from Robert McCune's.  (Case No. 5:19-cr-205-KKC, D.E. 83 at 4, United States Mem. Unresolved Obj. to PSR (Apr. 15, 2021).)  Mr. Rogers admitted to assisting Correll Buckhalter with submitting four false and fraudulent claims for other players, to receiving kickbacks from Buckhalter in return, and to causing a loss to the HRA of $179,814.  *Id.* at 4-5.  Unlike Mr. Rogers, Mr. Portis never

17

assisted Mr. McCune with false submissions for other players, nor did he receive payments relating to any other players, and the loss attributed to him was simply the $99,264 he received from his own HRA account and his since repaid.

Mr. Odom and Mr. Portis are both in the same loss-amount range and criminal history category. But, unlike Mr. Portis, Mr. Odom had submitted legitimate claims to the HRA Plan before connecting with Mr. McCune and he affirmatively knew at the outset that Mr. McCune would be submitting fraudulent claims—he would not be seeing a doctor or receiving any medical equipment. Mr. Bennett and Mr. Reid were likewise familiar with the HRA Plan before working with Mr. McCune, unlike Mr. Portis.

As for Mr. Montgomery, his text messages with Mr. Rogers show he was aware of the two fraudulent schemes being run by Mr. McCune and Messrs. Rogers and Buckhalter. Indeed, Mr. Montgomery played Mr. Eubanks (and Mr. McCune) against Mr. Rogers, to try to get a lower fee and get paid more quickly.

Finally, Mr. Horn received three years of supervised release and 200 hours of community service with no home detention. (Case No. 5:19-cr-00210-KKC, D.E. 52.) His culpability is substantially higher than the previously mentioned four defendants and Mr. Portis. Separate from Mr. McCune's scheme, Mr. Horn *himself* submitted other false and fraudulent claims to the HRA Plan for a total of around $100,000. (Case No. 5:19-cr-00210-KKC, D.E. 9-1 at 4.) He submitted these claims using the online portal to personally fill out false claim forms. He even found a doctor's office on the Internet to use as the treatment provider, though he never received any services. Mr. Horn submitted his own claims knowing they were fraudulent, and yet he still did not receive a sentence of imprisonment or any period of home detention. Mr. Portis, by contrast,

18

never saw what Mr. McCune was submitting in his name, and he certainly never made false submissions himself.

*   *   *

Mr. Portis fully accepts that he made a serious error in judgment in working with Mr. McCune. But his culpability is less than any of the above defendants, and Mr. Portis has already paid full restitution, reducing the need for ongoing Court supervision. Mr. Portis therefore respectfully requests that the impose a sentence no more punitive than theirs to avoid an unwarranted disparity.

### E. The Need to Provide Restitution

Mr. Portis has paid in full the $99,264.00 in restitution he owes.[45]

## CONCLUSION

For the foregoing reasons, Mr. Portis respectfully asks the Court to impose a sentence of time served in lieu of incarceration.

//

//

//

//

//

//

//

//

//

---

[45] Confirmation is attached as Exhibit C.

Dated: December 30, 2021

Respectfully submitted,

*/s/ Adam C. Reeves*

Adam C. Reeves
Stoll Keenon Ogden PLLC
300 W. Vine Street, Ste. 2100
Lexington, KY 40507
adam.reeves@skofirm.com

Kyle A. Clark (admitted *pro hac vice*)
Andrew T. George (admitted *pro hac vice*)
Julie B. Rubenstein (admitted *pro hac vice*)
Baker Botts L.L.P.
700 K. St. NW
Washington, D.C. 20001
kyle.clark@bakerbotts.com
andrew.george@bakerbotts.com
julie.rubenstein@bakerbotts.com

*Counsel for Defendant Clinton Portis*